IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

Norfolk Division

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) Criminal no. 2:15-cr-110 |
| | ) |
| JAMES D. WAITES, | ) |
| | ) |
| Defendant. | ) |

**United States' Supplemental Response to Motion to Dismiss**

This Court's order of October 13 requested supplemental briefing on three questions. The questions, and the United States' answers, are as follows:

(1) Is a violation of the Hobbs Act, 18 U.S.C. § 1951(a), divisible? Yes, the offense is divisible because extortion, conspiracy, and attempt possess distinct elements and otherwise satisfy the standards for divisibility. But that still leaves the question whether the definition of robbery in § 1951(b)(1) is divisible. Although the answer is not totally free from doubt, it appears that under current Fourth Circuit law, the Hobbs Act definition of robbery in § 1951(b)(1) does not create a divisible offense, at least in a respect that makes a difference here. For the reasons explained in the United States' response brief, once the term "physical force" is correctly understood, however, all Hobbs Act robberies have as an element the use, attempted use, or threatened use of physical force under 18 U.S.C. § 924(c)(3)(A). *See, e.g., United States v. Standberry*, 2015 WL 5920008, *4-5 (E.D.Va. Oct. 9, 2015). And likewise all Hobbs Act robberies satisfy § 924(c)(3)(B), a provision that is not unconstitutionally vague.

(2) Should the Court employ a categorical or modified categorical approach to determine whether a Hobbs Act violation is a crime of violence? Yes, existing precedent requires the Court

1

to apply the categorical approach to § 924(c)(3), and when the Court analyzes the Hobbs Act, the modified categorical approach may be used to eliminate extortion, conspiracy, and provisions of the Hobbs Act other than robbery. The indictment in this case, and the jury instructions that would be used at trial, eliminate the other portions of the Hobbs Act beyond a substantive robbery offense.

Some district courts have suggested that the modified categorical approach may be used within the definition of Hobbs Act robbery and narrow a robbery charge further to establish that a robbery predicate satisfies § 924(c)(3)(A). As explained below, the considerations that these courts have raised in applying the modified categorical approach to Hobbs Act robbery can be fit within other doctrines that the Supreme Court has recognized in applying the categorical approach and that help support rejecting defendant's arguments.

(3) This Court asked what materials may be considered in applying the modified categorical approach to the Hobbs Act. In applying the modified categorical approach, the Court may take into account the text of § 1951, the cases applying that provision, the indictment charging the offenses here, and the jury instructions that would be used in this case. Those materials suffice to show that defendant's Hobbs Act robbery satisfies § 924(c)(3)(A).

The United States discusses each of the points above in more detail in the following four sections. First, the government briefly explains existing precedent requiring that the categorical and modified categorical approach be applied to 18 U.S.C. § 924(c)(3). Second, the government describes the general legal framework for when Fourth Circuit law permits the modified categorical approach to be used. Third, relying on that framework, the United States explains why the Hobbs Act is divisible. Fourth, the United States explains how the points raised by

courts applying the modified categorical approach can be taken into account through other doctrines governing the modified categorical approach.

    **1.    Under existing precedent, § 924(c)(3) employs the categorical or modified categorical approach.**

The Fourth Circuit has applied the categorical approach to § 924(c)(3), *see, e.g., United States v. Fuertes*, --F.3d--, 2015 WL 4910113 (Aug. 18, 2015), and when an offense like Hobbs Act robbery satisfies the test for a crime of violence, all instances of that offense count as a matter of law as a predicate for § 924(c). *See, e.g., United States v. Johnson*, 32 F.3d 82, 85 (4th Cir. 1994) ("Under the definitional requirements of § 924(c)(3), the carjacking statute [in 18 U.S.C. § 2119] is a crime of violence."); *United States v. Adkins*, 937 F.2d 947, 950 n.2 (4th Cir. 1991) ("Armed bank robbery is unquestionably a crime of violence, because it 'has as an element the use, attempted use, or threatened use of physical force against the person or property of another.'") (citations omitted).

Illustrating these points, in standard jury instructions for § 924(c), juries are asked to find whether a defendant committed the predicate offense, but juries are not asked to determine whether that predicate offense counts as a crime of violence. *See, e.g., United States v. Wylie*, 328 F. App'x 888, 889 (4th Cir. 2009) (rejecting argument of defendant who was charged with Hobbs Act robberies as predicates for § 924(c) that the district "court erred by instructing the jury that robbery is a crime of violence for purposes of 18 U.S.C. § 924(c)(1)") (citing *Adkins*, 937 F.2d at 950 n.2). As the Fourth Circuit explained in *Adkins*, "Whether an offense is a 'crime of violence' [under § 924(c)(3)(A)] is a question of law for the court, and not a question of fact for the jury." 937 F.2d at 950 n.2.

The categorical approach is not applied invariably to statutes—particularly to statutes that deal with current offense conduct, rather than a prior conviction. For example, the Supreme

3

Court has held that, in analyzing whether a particular prior misdemeanor offense counts as one that "has as an element, the use or attempted use of physical force," 18 U.S.C. § 921(a)(33)(A), courts must use the categorical approach. *United States v. Castleman*, 134 S. Ct. 1405, 1413 (2014). But the Supreme Court has nevertheless rejected use of the categorical approach in determining whether a defendant's prior misdemeanor conviction involved a domestic relationship. *United States v. Hayes*, 555 U.S. 415, 426 (2009). *Cf. United States v. Price*, 777 F.3d 700, 707-10 (4th Cir. 2015) (assessing "whether the categorical approach or the circumstance-specific approach" applies to SORNA statute).

Courts have listed three reasons for using the categorical approach in evaluating prior convictions—(1) a constitutional concern at avoiding judicial factfinding that increases a defendant's sentence under mandatory recividism statutes at sentence; (2) practical concerns arising from evaluating the facts of past offenses that may have occurred long ago; and (3) statutory commands that a categorical approach be used. *See, e.g., Descamps v. United States*, 133 S. Ct. 2276, 2287-89 (2013). In the context of when a predicate offense counts as a crime of violence under § 924(c)(3), only the last of the three concerns is at issue.

**2.  The modified categorical approach allows courts to distinguish among separate offenses encompassed by a larger statutory provision.**

The Fourth Circuit recently reviewed in some detail the framework for applying the modified categorical approach in *United States v. Vinson*, 794 F.3d 418 (4th Cir. 2015). "Under the categorical approach, we look 'only to the fact of conviction and the statutory definition of the prior offense' . . . focus[ing] on the *elements* of the prior offense rather than the *conduct* underlying the conviction." *Id*. at 421 (quoting *United States v. Cabrera-Umanzor*, 728 F.3d 347, 350 (4th Cir. 2013)). *See also Johnson v. United States*, 135 S. Ct. 2551, 2557 (2015) ("Under the categorical approach, a court assesses whether a crime qualifies as a violent felony

4

'in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion.'") (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)).

In applying the categorical approach, courts "compare the elements of the statute forming the basis for the defendant's conviction with the elements of the 'generic' crime" that is enumerated in federal law. *Descamps*, 133 S. Ct. at 2281. But this approach is not limited federal statutes that rely on enumerated generic offenses to define a crime of violence. When law uses the force clause to evaluate whether a defendant's offense has as an element the use, attempted use, or threatened use of physical force, courts likewise use the approach outlined in *Descamps*. *See, e.g., Johnson v. United States*, 559 U.S. 133, 144 (2010).

The modified categorical approach may be used when the statute defining an offense sets forth "multiple, alternative elements creating several different crimes, some of which would match the generic federal offense and others that would not." *Vinson*, 794 F.3d at 421 (quoting *Omargharib v. Holder*, 775 F.3d 192, 197 (4th Cir. 2014)). Although again the passage from *Omargharib* refers to an enumerated "generic federal offense," the same rule applies to a force clause, such as the one that *Vinson* considered in § 921(a)(33)(A). This comparable treatment for enumerated offenses and for offenses captured by the force clause is unsurprising because generic offenses may be defined in terms similar to the force clause. *See, e.g.,* 18 U.S.C. § 3559(c)(2)(E) (defining "kidnapping" offenses as "an offense that *has as its elements* the abduction, restraining, confining, or carrying away of another person *by force or threat of force*") (emphasis added).

The modified categorical approach does not fundamentally change the mode of analysis. "[T]he modified categorical approach applies only in cases where the state crime is 'divisible'

because it 'consists of multiple, alternative elements creating several different crimes, some of which would match the generic federal offense and others that would not." *Vinson*, 794 F.3d at 424 (quoting *Omargharib*, 775 F.3d at 197). As the Supreme Court has noted, the modified categorical approach "retains the categorical approach's central feature: a focus on the elements, rather than the facts, of a crime. And it preserves the categorical approach's basic method: comparing those elements with the generic offense's. All the modified approach adds is a mechanism for making that comparison when a statute lists multiple, alternative elements, and so effectively creates 'several different . . . crimes.'" *Descamps*, 133 S. Ct. at 2285 (quoting *Nijhawan v. Holder*, 557 U.S. 29, 41 (2009)).

More specifically, "[a] crime is divisible under *Descamps* only if it is defined to include multiple alternative *elements* (thus creating multiple versions of a crime), as opposed to multiple alternative *means* (of committing the same crime)." *Vinson*, 794 F.3d at 424 (quoting *Omargharib*, 775 F.3d at 198. "Elements, as distinguished from means, are factual circumstances of the offense the jury must find unanimously and beyond a reasonable doubt." *Id*.

The distinction between elements and means, however, is not always self-evident. But both *Descamps* and *Vinson* noted a number of considerations to take into account in drawing the distinction:

First, when "the kind of conduct proscribed by the different formulations" of a criminal statute "differs quite significantly," that "suggests that . . . the different formulations should be treated as separate crimes warranting the use of the modified categorical approach." *Vinson*, 794 F.3d at 425 (citing *Chambers v. United States*, 555 U.S. 122, 126 (2009)).

6

Second, "non-exhaustive lists of various acts" may constitute alternative means, not elements. *Vinson*, 794 F.3d at 426. But those non-exhaustive lists should be distinguished from "fully functioning, stand-alone, alternative definitions of *the offense itself*"—definitions that "capture the entire universe of the ways in which [the offense] may be committed." *Id*. "Courts may *modify* the categorical approach to accommodate *alternative statutory definitions*." *Id*. (quoting *Descamps*, 133 S. Ct. at 2291).

Third, the Fourth Circuit "has looked to the manner in which the offense is charged to the jury." *Vinson*, 794 F.3d at 426. "If the different formulations were alternative means rather than alternative elements, one would expect to find cases where all three formulations were included in the jury instructions." *Id*.

Fourth, when one of a listed alternative is treated as a separate crime, rather than an alternative means, that distinction supports that the other alternatives are separate crimes as well. *Id*. at 128-29 ("[I]f one of the three formulations of assault under North Carolina law is a separate crime, we can conceive of no basis for treating the other formulations otherwise.").

Fifth, the manner in which indictments are drafted can be informative in making the determination—a point stressed in *Descamps*. The Fourth Circuit noted this in *Vinson*:

> In *Descamps*, the dissent expressed concern about the difficulty in distinguishing alternative means from alternative elements. *See Descamps*, 133 S. Ct. at 2297-98 (Alito, J., dissenting). In response, the majority stated that when an elements-versus-means question arises, "the documents we approved in *Taylor* and *Shepard*—i.e., indictment, jury instructions, plea colloquy, and plea agreement—would *reflect the crime's elements*. So a court need not parse state law in the way the dissent suggests: When a state [offense is formulated] in the alternative, the court merely resorts to the approved documents and compares the elements revealed there to those of the generic offense.

794 F.3d at 439 (quoting *Descamps*, 133 S. Ct. at 2285 n.2).

Finally, in keeping with the analysis above, when an offense is divisible, a court looks at the class of materials that may be used in the modified categorical approach to analyze which of

7

the multiple, separate crimes provided in a statute the defendant committed. *See, e.g., Johnson*, 559 U.S. at 144 ("When the law under which the defendant has been convicted contains statutory phrases that cover several different generic crimes, some of which require violent force and some of which do not, the 'modified categorical approach' that we have approved permits a court to determine which statutory phrase was the basis for the conviction by consulting the trial record— including charging documents, plea agreements, transcripts of plea colloquies, findings of fact and conclusions of law from a bench trial, and jury instructions and verdict forms.") (citations omitted).

> 3. **The Hobbs Act is divisible, but the substantive offense of Hobbs Act robbery is not divisible in a manner that matters here.**

The framework above establishes that the Hobbs Act creates several distinct offenses. Robbery and extortion under the Hobbs Act have different elements and create separate crimes, making them easily divisible, and defendant has never contended otherwise. *See, e.g., United States v. Tillery*, 702 F.3d 170, 174 (4th Cir. 2012) (distinguishing extortion and robbery under Hobbs Act); *United States v. Mackie*, 2015 WL 5732554 *3 (W.D.N.C. Sept. 30, 2015) (listing distinct offenses under the Hobbs Act).

For starters, robbery and extortion have different statutory definitions under the Hobbs Act in § 1951(b)(1) and (2)—resulting in different elements—and "[c]ourts may *modify* the categorical approach to accommodate *alternative statutory definitions*." *Vinson*, 794 F.3d at 426 (quoting *Descamps*, 133 S. Ct. at 2291). But more fundamentally, the elements for extortion and robbery under the Hobbs Act are distinct. Indeed, the offenses are sufficiently distinct that each has an element that the other does not making the two offenses separate offenses under the Double Jeopardy Clause—a requirement that goes beyond what *Descamps* and other cases

8

require. A lesser-included offense could fall outside the definition of a crime of violence, while the greater offense would count as a crime of violence.

Robbery and extortion under the Hobbs Act differ in a number of important ways. For example, robbery requires a taking of property "from the person or in the presence of another," 18 U.S.C. § 1951(b)(1), while extortion does not have a presence requirement. And extortion has a requirement of obtaining property with the victim's "consent," a requirement not imposed in robbery cases. A mobster who threatens to shoot a business owner to death at a later date if the business owner does not make future regular payments to the mob has committed extortion. But a defendant who points a gun at a cashier and rips a cash register from a store counter has committed robbery. Both offenses are accomplished by putting the victim in fear of being shot to death, but each offense has an element the other does not. Consent, of course, in the context of extortion is not the fully voluntary kind. Extortion covers situations where the victim is given the option of relinquishing property or face future unlawful violence. So the distinctions between consent or not and in the presence or not ultimately can begin to approach each other at the outer limits of their applications. All laws have grey areas at the outer limit of their application, but the elements of Hobbs Act robbery and extortion are distinct.

Moreover, extortion may plainly be divided further. The Hobbs Act's application to public corruption is divisible from extortion through violent means. The public-corruption portion of the Hobbs Act has distinct elements and is divisible. *See, e.g., United States v. McDonnell*, 792 F.3d 478, 500 (4th Cir. 2015) (describing requirements of quid pro quo and official action for public-corruption extortion). The elements for the public-corruption portion of the Hobbs Act apply to neither robbery nor extortion by force. *Cf. Evans v. United States*, 504 U.S. 255, 261 (1992) ("Congress has unquestionably *expanded* the common-law definition of

extortion to include acts by private individuals pursuant to which property is obtained by means of force, fear, or threats.").

Other measures identified in *Vinson* of when a statute is divisible confirm that extortion and robbery under the Hobbs Act are distinct offenses that are divisible. The conduct proscribed by the two offenses is different; the terms robbery and extortion are not part of a nonexhaustive list; robbery and extortion are not charged together to the jury; other distinct crimes, such as conspiracy, are listed in § 1951(a); and the indictment in this case (and more generally in Hobbs Act robbery cases) does not incorporate the language of both the definition of extortion and the definition of robbery.

As just noted, conspiracy has distinct elements and again satisfies even the double jeopardy test. *See, e.g., United States v. Robinson*, 627 F.3d 941, 958 (4th Cir. 2010) ("Because [the defendant's § 924(c) convictions] require proof the substantive crime was actually committed while [his conspiracy conviction under § 924(o)] does not, and the latter requires proof of an agreement but the former do not, these convictions satisfy the Double Jeopardy Clause.") (citing *Blockburger v. United States*, 284 U.S. 299, 304 (1932)). Attempt is also a separate crime from conspiracy. *See, e.g., Abney v. United States*, 431 U.S. 651, 664 (1977) (describing Hobbs Act conspiracy and attempt charges as distinct crimes). And § 924(c)(3)(A) by its terms encompasses "attempted use" of force.

It should also be noted that the language in the Hobbs Act that addresses when a defendant "commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of" § 1951(a) does not assist defendant. In analyzing this language in the Hobbs Act, the Supreme Court explained that it does not prohibit violence that affects commerce without proof of more. *Scheidler v. Nat'l Org. for Women, Inc.*, 547 U.S.

10

9, 22 (2006). Rather, the language still requires either a robbery or extortion as its object because the clause "make[s] clear that the statute prohibit[s] not all physical violence, but only physical violence in furtherance of *a plan or purpose to engage in robbery or extortion*." *Id*. As the United States noted, "the clause would apply to a defendant who injured bystanders during a robbery, permitting the Government to charge that defendant with the Hobbs Act crime of robbery and the separate Hobbs Act crime of using violence in furtherance of the robbery." *Id*.

The final question is whether the definition of Hobbs Act robbery in § 1951(b)(1) is divisible. As explained above, for § 1951(b)(1) to be divisible, it would have to create distinct elements not means. The relevant candidate for divisibility here would seem to be the language saying that the robbery may be accomplished "by means of actual or threatened force, or violence, or fear of injury, immediate or future." Section 1951(b)(1) may very well create a divisible offense when it provides that the threat may be to the victim's "person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining." That question need not be resolved here, however, because the definition of § 924(a)(3)(A) and (B) applies to force "against the person or property of another." But the provision about force, violence, or fear of injury does not appear to be divisible, just as the language in 18 U.S.C. § 2111 does not appear to be divisible when it refers to "by force and violence, or by intimidation."

Although again the question is not free from doubt, the factors listed in *Vinson* do not appear to support divisibility of the language specifying "actual or threatened force, or violence, or fear of injury, immediate or future." First, the proscribed conduct does not differ significantly. As the United States has explained in its response brief, these provisions all cover

11

the use, attempted use, or threatened use of physical force. Of course, if defendant's reading of the statute were correct (and it is not), then there might well be a case for divisibility.

Second, to the government's knowledge, jury instructions that are presented in Hobbs Act robberies present the full range of alternatives to the jury—"actual or threatened force, or violence, or fear of injury, immediate or future" and do not require unanimity on those alternatives. Again, this point reflects that all robberies are accomplished by the use, attempted use, or threatened use of force. Third, Hobbs Act indictments often list all of those means, again underscoring that robberies are accomplished through force.

Two factors weigh in favor of divisibility. First, the extortion definition at least is divisible by having a separate offense for political corruption when a defendant acts "under color of official right." That divisibility in § 1951(b)(2) supports that there may be divisibility in § 1951(b)(1). Similarly threats to property may be divisible in the definition of robbery in § 1951(b)(1). Second, the phrase "actual or threatened force, or violence, or fear of injury, immediate or future" creates an exhaustive list of alternatives.

On balance, however, assuming the incorrectness of defendant's reading of the Hobbs Act, the phrase "actual or threatened force, or violence, or fear of injury, immediate or future" does not appear divisible. That conclusion does not matter, however, because all aspects of the appropriate definition satisfy § 924(c)(3)(A). *See, e.g., Standberry*, 2015 WL 5920008, *4-5.

**3. The points raised by some courts in applying the modified categorical approach to Hobbs Act robbery when that offense serves as a predicate for § 924(c)(3) can be captured by other doctrines.**

Some courts have sought to use the modified categorical approach to take into account the fundamental fact that in every § 924(c) count that relies on a robbery predicate, a gun is

12

being possessed in furtherance of the offense or used or carried during and in relation to the offense. Moreover, those facts are necessarily being found by a jury.

Of course, § 924(c) does require that the predicate offense be itself either a crime of violence or drug-trafficking offense. And the modified categorical approach does not permit a court to resort directly to the facts of the case.

But there is a way for a court to take the jury findings required by § 924(c) into account, even if those findings may not be directly used in applying the modified categorical approach. In arguing that Hobbs Act robbery fails to satisfy § 924(c)(3), defendant invokes hypothetical ways that a robbery might be carried out that have appeared in literally no reported case in the history of American (or English) law. Although robberies have been criminal for many centuries, 3 E. Coke, The Third Part of the Institutes of the Laws of England 68 (1644), and the reported cases on robbery are too numerous to count, defendant's arguments that robbery fails to satisfy § 924(c)(3) depend on fanciful examples for which he cites *no* supporting case from those many centuries of law. Meanwhile, the actual ways that robberies are carried out easily satisfy § 924(c)(3)(A)—as the facts of defendant's case and countless others vividly demonstrate. When a defendant aims a gun at a robbery victim's head, the robbery is being accomplished through the use of force or at a minimum threatened force.

Notably, in making his arguments, defendant is not relying on a specifically enumerated means of committing an offense, like sex trafficking by "fraud" considered in *Fuertes*. Rather, defendant relies on bizarre scenarios that either do not properly fall within Hobbs Act robbery or represent means that, however unusual, should both be deemed robbery and a use of force. A defendant has used force, for example, if he gasses everyone to death in a convenience store so that he can steal the cash register. That is a crime of violence.

13

One reason that defendant's hypos fail to persuade turns on a point that the Supreme Court has repeatedly made. An act of legal imagination is not enough to remove a crime categorically from qualifying as a crime of violence:

> [T]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute requires more than the application of legal imagination to a state statute's language. It requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime. To show that realistic probability, an offender, of course, may show that the statute was so applied in his own case. But he must at least point to his own case or other cases in which the state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.

*Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007).

The Supreme Court has repeatedly made this point. *See, e.g., Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684-85 (2013) ("[O]ur focus on the minimum conduct criminalized by the state statute is not an invitation to apply 'legal imagination' to the state offense; there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime.'") (quoting *Duenas-Alvarez*, 549 U.S. at 193). *See also James v. United States*, 550 U.S. 192, 208-09 (2007) *overruled on other grounds by Johnson v. United States*, 135 S. Ct. 2551 (2015).

Notably, in the present case, because of the context under § 924(c) where a prior conviction is not at issue, defendant is relying on not only an act of "legal imagination," but also a fanciful act of legal imagination that the jury's findings will exclude. The jury will find that the robbery was carried out with a gun, and the indictment in this case charges that.

It must be acknowledged that the Fourth Circuit has said in the context of interpreting a guideline provision that the language from *Duenas-Alvarez* is limited to enumerated offenses. *See United States v. Torres-Miguel*, 701 F.3d 165, 169-70 (4th Cir. 2012). But *Torres-Miguel* simply did not address the special context presented here. In this case, as just noted, the jury

14

itself makes findings that exclude defendant's hypos that do not involve force. There is no reason to extend *Torres-Miguel*'s mistaken reasoning to the present context. And it is clear that *Torres-Miguel* is mistaken on this point.

First, *Torres-Miguel* is wrong because *James* is a residual clause case, not a case applying an enumerated offense. Second, the conclusion in *Torres-Miguel* makes no sense because the enumerated offenses must be defined in terms of a generic standard, and that generic standard may have little material difference from the force clause. As noted above, the definition of kidnapping in § 3559(c)(2)(E) provides that "the term 'kidnapping' means an offense that *has as its elements* the abduction, restraining, confining, or carrying away of another person *by force or threat of force*." Third, the restrictions on the modified categorical approach apply equally to enumerated offenses and the force clause; there simply is not a meaningful analytical difference between the approach taken by the force clause and enumerated offenses. If a "realistic possibility" is required to take an offense outside an enumerated offense, the same should be true of the force clause. *Torres-Miguel* offers no coherent reason for why the Supreme Court would have drawn the unstated distinction that *Torres-Miguel* purports that the Supreme Court drew.

**4.     Conclusion**

Defendant's approach to the crime-of-violence provision in § 924(c)(3) would turn it into a provision with literally no application. The law does not support that result, and no court has agreed with his argument. Defendant's motion to dismiss the count charging him with a § 924(c) violation should be denied.

                                                Respectfully submitted,

                                                Dana J. Boente
                                                United States Attorney

      /s/
Richard D. Cooke
Assistant United States Attorney
Eastern District of Virginia
600 East Main Street, Suite 1800
Richmond, VA 23219
(804) 819-5471
richard.cooke@usdoj.gov

John F. Butler
Special Assistant United States Attorney
Attorneys for the United States
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Tel: 757-441-6331
Fax: 757-441-6689
Email: john.f.butler@usdoj.gov

**Certificate of Service**

  I certify that on October 19, 2015, I filed electronically the foregoing with the Clerk of Court using the CM/ECF system, which will send a copy to all counsel who have entered an appearance in this case.

                       /s/
                   Richard D. Cooke
                   Assistant United States Attorney
                   Eastern District of Virginia
                   600 East Main Street, Suite 1800
                   Richmond, VA 23219
                   (804) 819-5471
                   richard.cooke@usdoj.gov